IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
_____

**CHARLES BELK,**

     Appellant,

Vs.

**OBION COUNTY, TENNESSEE**
**SHERIFF EWELL BAKER,**

     Appellees.

Obion Circuit No. 7-527
C.A. No. 02A01-9807-CV-00189

**FILED**

**May 11, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

_____

FROM THE OBION COUNTY CIRCUIT COURT
THE HONORABLE WILLIAM B. ACREE, JR., JUDGE

Charles Belk, Pro Se

James I. Pentecost; Waldrop & Hall of Jackson
For Appellees

*REVERSED IN PART, AFFIRMED IN PART AND REMANDED*

Opinion filed:

                                   **W. FRANK CRAWFORD,**
                                   **PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**DAVID R. FARMER, JUDGE**

     Plaintiff, Charles Belk (Belk), filed suit against defendants, Sheriff Ewell Baker (Baker),

in his official capacity as Sheriff of Obion County, and Obion County, Tennessee, claiming

deprivation of his constitutional rights under 42 U.S.C. § 1983, as well as violations of the

Tennessee Governmental Tort Liability Act (GTLA). Belk alleged that Baker violated his civil rights by delaying medical aid while he was a prisoner in the Obion County jail. Belk appeals the trial court's grant of summary judgment in favor of Baker and Obion County.

On March 25, 1996, Belk was an inmate at the Obion County jail in Union City, Tennessee. At approximately midnight, Belk tied his bed sheets together and climbed through a second floor window in an attempt to escape. The bed sheets tore in the attempt, and he fell to the pavement below suffering a compound fracture to his lower leg. Prison officials immediately discovered Belk's escape attempt, notified Baker, and called an ambulance.

Baker arrived within minutes of the notification, and an ambulance arrived shortly thereafter at 12:08 a.m. It is disputed whether Baker left orders with the prison guards that the medical personnel were not to assist or move Belk without prior approval. However, it is undisputed that Belk laid in a pool of rainwater without medical assistance until 12:27 a.m. when medical personnel were allowed to administer treatment. After being stabilized and placed in the ambulance, Belk arrived at the hospital at 12:30 a.m.

The events after Belk's fall and injury are disputed. According to Baker, Belk told him that another prisoner had pushed him from the roof of the jail. Knowing that the other prisoner named by Belk was housed in a prison block opposite the incident, Baker states in his affidavit that he assumed a major prison breakout had occurred. In order to secure the area, Baker refused to allow Belk to be moved until he had investigated the situation. Baker, however, denies in his affidavit that he instructed medical personnel not to treat Belk.

Belk disputes Baker's assertions. Specifically, he states in his affidavit that a sheet he was using to climb down tore, causing him to fall. He also states that deputies said that Baker instructed them not to allow medical personnel to treat him.

On March 24, 1997, Belk brought this action against Baker and Obion County alleging that the medical personnel were present shortly after the fall, but they were not allowed to attend to his injuries or move him as a direct result of Baker's orders. He further avers that he was deprived of his rights and privileges as afforded him under the Fourth, Fifth, Eighth, and Fourteenth amendments to the United States Constitution and in contravention of 42 U.S.C. §§ 1983 and 1988 and the laws of the state of Tennessee in that Baker and the County acted negligently and in a willful, wanton, and deliberate disregard for his well being, and that the

2

defendants acted under color of state law in their official capacity.

Baker and the County moved for summary judgment in accordance with Tenn. R. Civ. P. 56. After a hearing, the trial judge granted the defendants' motion and rendered judgment in favor of Baker and the County. Belk filed a timely appeal and the issue for review is whether the trial court erred in granting the defendants' motion for summary judgment.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

We first examine Belk's 42 U.S.C. § 1983 claim against the county for Baker's acts allegedly violating rights under the Fourth, Fifth, and Fourteenth Amendments. Baker and the County assert that Belk's claim is not actionable because no policy or custom was shown as required under § 1983, or in the alternative, if deliberate indifference is the correct standard, Belk does not meet it because Baker acted to secure the prison.

42 U.S.C. § 1983 (1994) provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or

3

usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The County challenges Belk's claim on the basis that a single instance of unconstitutional activity cannot give rise to a § 1983 action. While it is true, as the defendants assert, that liability under § 1983 is limited to deprivations of federally protected rights caused by action taken "pursuant to official municipal policy of some nature…," *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L.E.2d 611 (1978), a decision by municipal policy makers on a single occasion may satisfy this requirement. *Pembaur v. City of Cincinnati*, 106 S. Ct. 1292, 1294 (1986).

The United States Supreme Court in *Pembaur* stated in pertinent part:

> But the power to establish policy is no more the exclusive province of the legislature at the local level than at the state or national level. *Monell's* language makes clear that it expressly envisioned other officials "whose acts or edicts may fairly be said to represent official policy," *Monell*, supra, 436 U.S., at 694, 98 S.Ct. at 2037-2038, and whose decisions therefore may give rise to municipal liability under § 1983.

> \*          \*          \*

> [A] government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations. If the decision to adopt that particular course of action is properly made by that government's authorized decision makers, it surely represents an act of official government "policy" as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly. To deny compensation to the victim would therefore be contrary to the fundamental purpose of § 1983.

> \*          \*          \*

> Municipal liability attaches only where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered. … The official must also be responsible for establishing final governmental policy respecting such activity before the municipality can be held liable.[1] Authority to

---

[1] The *Pembaur* Court noted an example relevant to the case before this Court. They stated in pertinent part:

> Thus, for example, the County Sheriff may have discretion to hire and fire employees without being the county official responsible for establishing any county employment policy. If this were the case, the Sheriff's decisions respecting employment would not give rise to municipal liability, although similar decisions with respect to law enforcement practices, over which the Sheriff *is* the official policy maker, *would* give rise to municipal liability.

*Pembaur*, 106 S.Ct. at 1300, n.12.

4

> make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policy making authority is a question of state law.

*Pembaur*, 106 S. Ct. at 1298-1300.

We must determine whether Baker was a "policy maker" as defined by *Pembaur*. The Tennessee statute which defines the powers and duties of county sheriffs states in pertinent part:

> **8-8-201. Duties of office.** -- It is the sheriff's duty to:
>
>            *              *             *
>
> (3) Take charge and custody of the jail of the sheriff's county, and of the prisoners therein; receive those lawfully committed, and keep them personally, or by deputies or jailer, until discharged by law; . . . .

T.C.A. § 8-8-201(3) (Supp. 1998).

After examining the above statute, we believe that Baker has final decision making authority concerning the county prison and is a "policy maker" as defined by the United States Supreme Court in *Pembaur*.[2] Therefore, one instance of unconstitutional activity by Baker states a cause of action under § 1983.

Next, we must determine the correct standard for determining a violation of a prisoners right to medical care. The United States Supreme Court articulated the standard for determining whether a prisoner's constitutional right to medical care under the Eighth Amendment of the U.S. Constitution has been violated in *Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S. Ct. 285, 291, 50 L. Ed.2d 251 (1976). The Supreme Court stated in pertinent part:

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 104-05, 97 S. Ct. at 291 (citation omitted).

As noted by the Sixth Circuit, the *Estelle* standard consists of two components, one objective and one subjective: "(1) a sufficiently grave deprivation, such as medical needs; and (2) a sufficiently culpable state of mind." *Berryman v. Rieger, et al*, 150 F.3d 561, 566 (6th Cir. 1998). When a prisoner suffers pain needlessly and relief is readily available, they have a cause of action against those whose deliberate indifference is the cause of the suffering. *Boretti v. Wiscomb*, 930 F.2d 1150, 1154-55 (6th Cir. 1991).

---

[2]Appellees' own brief submitted in this appeal states, "[t]hus, the Sheriff is a policy maker, for purposes of Tennessee law. . . ."

As the Supreme Court noted in *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994), a plaintiff must prove that his medical needs are serious in order to show deliberate indifference. A "serious medical need" has been defined as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.N.H. 1977). In considering the seriousness of a medical need, courts must determine whether the defendant's act or omission resulted in a denial of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed.2d 59 (1981). Neither negligence nor gross negligence will support a § 1983 claim. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105-06, 97 S. Ct. at 292.

In order to determine the appropriateness of summary judgment, we examine three elements: "(1) whether a *factual* dispute exists; (2) whether the disputed fact is *material* to the outcome of the case; and (3) whether the disputed fact creates a *genuine issue* for trial." *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993).

Clearly, the facts in this case are disputed. Baker's affidavit states in pertinent part:

> 9. While I do not recall making any statement to the effect that the prisoner, Charles Belk, was not to be moved, any such statement which I may have made would have been out of my concern for the safety and well-being of the prisoner and would have only meant that the prisoner was not to be moved until medical technicians from the Obion County Regional Emergency Medical Services arrived.
>
>         *                *                *
>
> 14. I neither saw nor spoke with the ambulance driver or other medical personnel at the scene, as I was upstairs in the jail making sure that the jail was secure.
>
> 15. I never instructed the ambulance driver or other medical attendant not to perform any medical services for the prisoner.
>
> 16. I never instructed the ambulance driver or the medical attendant not to move the prisoner.
>
> 17. Since I was already upstairs in the jail when the ambulance arrived on the scene, I neither spoke to nor saw either the ambulance driver or the medical attendant, and therefore it would be impossible for me to have "instructed the ambulance driver to not perform any services or to move the prisoner until further instructions were given" as alleged in the complaint.

Baker's assertions in his affidavit are disputed by three witnesses at the scene. Belk's affidavit states in pertinent part:

6

3. The ambulance arrived and the attendants asked the Sheriff's Deputy if they could treat me and was informed by the Sheriff's Deputy that they could not do anything or move me in any way pending further orders from the Sheriff.… Ms. Doster pleaded with one of the Police Officers guarding me to go into the Courthouse and ask the Sheriff if I could be treated or moved and after a few minutes passed the Police Officer came back and stated that the Sheriff said that I could not be moved until further instructions. Finally after what seemed like a very long time, a Sheriff's Deputy gave the ambulance attendant permission to move me. . . .

Linda Doster, who worked across the street from the courthouse and came over to see what had happen at the prison when Belk fell, provided the following affidavit.

2. I was in my office on March 25, 1996, when I observed a commotion at the Courthouse and I went across the street to the Courthouse to see what was going on. I observed Charles Belk lying on the concrete sidewalk in the rain, lying in a puddle of water with **his leg broken and the bone protruding from the skin**. The ambulance arrived a few minutes later and the attendants were told by the deputy that Sheriff Baker said no one was to move Mr. Belk. I finally got an umbrella and held over Mr. Belk as no one else was assisting him or protecting him from the elements and stood there while all of us were waiting for approval from the Sheriff for Mr. Belk to be treated.

3. I recall several persons asking permission to treat and remove Mr. Belk and take him to the hospital and remember that the deputies who responded to these inquiries related that the Sheriff had stated that he did not want Mr. Belk moved or touched in any way.

&ast;   &ast;   &ast;

7. Mr. Belk was lying face down in approximately three inches of water with his hands handcuffed behind his back. He had a severely crushed left leg. He was surrounded by police personnel and sheriff's deputies all of whom were just standing around. Noone [sic] was doing anything for Mr. Belk.

(emphasis added).

Further, James Shipley, the paramedic and ambulance driver that treated Belk, stated in his affidavit that "I was informed by a Deputy of the Obion County Sheriff's Department not to move Charles Belk without the permission of Sheriff Ewell Baker."

These disputed facts must be material to preclude summary judgment. A disputed fact is material if it must be decided in order to resolve substantive claims or defenses at which the summary judgment motion is directed. *Byrd*, 847 S.W.2d at 215. Deliberate indifference to a prisoners medical needs is determined through a two part test. First, the prisoner must show "a sufficiently grave deprivation, such as medical needs…" *Berryman v. Rieger, et al*, 150 F.3d 561, 567 (6th Cir. 1998). It is undisputed that Belk suffered a compound fracture to the leg, and the bone was clearly visible protruding through the skin. We believe this satisfies the first element.

The second element requires that Baker acted with "sufficiently culpable state of mind." *Berryman*, 150 F.3d at 567. Negligence and gross negligence are not enough. "In order to state a cognizable claim, a prisoner must

allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976). As noted above, Baker denies telling deputies that Belk was not to be treated. However, Belk claims that Baker acted in a deliberately indifferent manner. This dispute as to Baker's purpose for leaving Belk unattended goes directly to Baker's state of mind, and is therefore material.

> [T]he test for a "genuine issue" is whether a reasonable jury could legitimately resolve that fact in favor of one side or the other. If the answer is yes, summary judgment is inappropriate; if the answer is no, summary judgment is proper because a trial would be pointless as there would be nothing for the jury to do and the judge need only apply the law to resolve the case.

*Byrd*, 847 S.W.2d at 215. It seems clear that a jury could resolve this dispute in favor of Belk and find that Baker was deliberately indifferent to Belk's medical needs by delaying medical care to him to punish him for his escape attempt. Therefore, a genuine issue of a material fact exists in this case and summary judgment was improper.

The final issue we must address concerns Belk's claim under the Tennessee Governmental Tort Liability Act (GTLA), T.C.A. § 29-20-201, et al (1980 & Supp. 1998). The GTLA allows suit against county and municipal governments for negligent acts of its employees; however, neither intentional torts nor violations of civil rights are covered under the GTLA. T.C.A. § 29-20-205(2) (1980); *Jenkins v. Loudon County*, 736 S.W.2d 603, 608 (Tenn. 1987). Thus, summary judgment was appropriate on this issue.

The order of the trial court granting summary judgment on the § 1983 claim is reversed, and the order in all other respects is affirmed. The case is remanded for such other proceedings as may be necessary. Costs of the appeal are assessed against the appellee.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**


_____
**ALAN E. HIGHERS, JUDGE**

_____
**DAVID R. FARMER, JUDGE**