# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### April 1998 Session

## AMERICAN CABLE CORP. v. ACI MANAGEMENT, INC., ET AL.

### Appeal from the Chancery Court for Davidson County
### No. 95-74-I    Irvin H. Kilcrease, Jr., Chancellor

---

### No. M1997-00280-COA-R3-CV - Filed September 14, 2000

---

This appeal involves a legal dispute arising out of a contract to install television cable in Alabama and Mississippi. After the corporation that installed the cable did not receive full payment for its work, it filed suit in the Chancery Court for Davidson County Tennessee against the corporation and partnership that hired it and the president of the defendant corporation. The trial court granted a summary judgment dismissing the claims against the defendant corporation's president, and the installer took a default judgment against the corporation for $1,059,743. On this appeal, the installer takes issue with the summary judgment dismissing its claims against the defendant corporation's president. We have determined that the trial court properly granted the summary judgment because the installer failed to demonstrate that it will be able to prove all the essential elements of its tort claims against the defendant corporation's president.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which HENRY F. TODD, P.J., M.S., and JERRY SMITH, J., joined.

W. Gary Blackburn and William J. Shreffler, Nashville, Tennessee, for the appellant, American Cable Corporation.

H. Frederick Humbracht, Jr., Nashville, Tennessee, for the appellee, Vince King.

### OPINION

ACI Management, Inc. ("ACI") was the general partner of a Brookridge Cable Special Purpose Partnership ("Brookridge"). ACI and Brookridge obtained contracts to install television cable in Alabama and Mississippi. In December 1993, they entered into an oral contract with American Cable Corporation ("American Cable") to install four hundred miles of cable in Cullman, Alabama and Hatton, Alabama and in Iuka, Mississippi. The parties agreed that American Cable would perform the work and then submit invoices for the completed work to ACI and Brookridge. These invoices were to be payable within thirty days.

American Cable commenced work and began submitting invoices to ACI and Brookridge. At first, ACI and Brookridge paid these invoices in a timely manner; however, their payments began to fall behind before the contract had been in effect for a full fiscal quarter. By the third week of March 1994, ACI and Brookridge owed American Cable $450,000 for work that had already been performed and invoiced. Even though the relationship between the parties began to deteriorate, American Cable continued to work and to submit invoices. By mid-May 1994, ACI and Brookridge still owed American Cable $300,000.

At this point, American Cable sought assurances from ACI and Brookridge that it would be paid for the work being performed. Vincent King, ACI's president, told American Cable that its invoices would be paid and instructed American Cable to continue working. Mr. King apparently also told American Cable that it would not be paid until the subscribers in the three cities where cable was being laid began to purchase cable subscriptions. American Cable continued working, but ACI and Brookridge paid only $25,000 of the invoiced charges. When the work was fully performed in August, 1994, American Cable's outstanding, overdue invoices amounted to $444,134.53. Mr. King acknowledged that ACI and Brookridge owed the money and assured American Cable that it would be paid. During the remainder of 1994, ACI and Brookridge paid American Cable another $175,330.

In January 1995, American Cable filed suit in the Chancery Court for Davidson County against ACI, Brookridge, and Mr. King. The claims asserted against Mr. King included promissory fraud and unjust enrichment. ACI, Brookridge, and Mr. King denied liability, and Brookridge counterclaimed against American Cable for delay in performing the work. Prior to trial, American Cable voluntarily dismissed Brookridge as a party.[1] In March 1996, the trial court granted summary judgment dismissing all the personal claims against Mr. King. Three months later, on June 17, 1997, the trial court awarded American Cable a $1,059,743 judgment against ACI. American Cable now appeals from the summary judgment dismissing Mr. King as a defendant.

## I.
### APPELLATE REVIEW OF SUMMARY JUDGMENTS

As we have said many times, summary judgments are not some sort of disfavored procedural shortcut. *Bradley v. McLeod*, 984 S.W.2d 929, 932 (Tenn. Ct. App. 1998); *Mansfield v. Colonial Freight Sys.*, 862 S.W.2d 527, 530 (Tenn. Ct. App. 1993). They are, instead, part and parcel of the pretrial proceedings in most civil cases. Their salutary purpose is "to enable the courts to pierce the pleadings to determine whether the case justifies the time and expense of a trial." *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). Accordingly, a summary judgment motion can provide a relatively quick and efficient means of concluding a case when the law is clear and when the material facts are not genuinely disputed. *Smith v. Bridgestone/Firestone, Inc.*, 2 S.W.3d 197, 200 (Tenn. Ct. App. 1999).

---

[1]The order voluntarily dismissing ACI's claims against Brookside is not in the record. Counsel informed the court during oral argument of the disposition of these claims. It is undisputed that Brookside is not a party to this appeal.

The party seeking the summary judgment bears the burden of demonstrating that no genuine dispute of material fact exists and that it is entitled to a judgment as a matter of law. *Shadrick v. Coker*, 963 S.W.2d 726, 731 (Tenn. 1998); *Belk v. Obion County*, 7 S.W.3d 34, 36 (Tenn. Ct. App. 1999). Once the moving party carries its burden, the nonmoving party must come forward with evidence to demonstrate that there are sufficient factual disputes to warrant a trial. The nonmoving party may carry its burden by (1) pointing to evidence either overlooked or ignored by the moving party that creates a material factual dispute, (2) rehabilitating evidence challenged by the moving party, (3) producing additional evidence that creates a material factual dispute, or (4) submitting an affidavit in accordance with Tenn. R. Civ. P. 56.07 requesting additional time for discovery. *McCarley v. West Quality Food Serv.*, 950 S.W.2d 585, 588 (Tenn. 1998); *Byrd v. Hall*, 847 S.W.2d at 215 n.6; *DeVore v. Deloitte & Touche*, No. 01A01-9602-CH-00073, 1998 WL 68985, at *3 (Tenn. Ct. App. Feb. 20, 1998) (No Tenn. R. App. P. 11 application filed). Nonmoving parties who do not carry their burden face summary dismissal of the challenged claim because, as our courts have repeatedly observed, the "failure of proof concerning an essential element of a cause of action necessarily renders all other facts immaterial." *Alexander v. Memphis Individual Practice Ass'n*, 870 S.W.2d 278, 280 (Tenn. 1993); *Strauss v. Wyatt, Tarrant, Combs, Gilbert & Milom*, 911 S.W.2d 727, 729 (Tenn. Ct. App. 1995).

When reviewing a summary judgment on appeal, we must consider the same materials considered by the trial court to decide anew whether the summary judgment was appropriate. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997); *Hart v. Tourte*, 10 S.W.3d 263, 267-68 (Tenn. Ct. App. 1999). Summary judgments enjoy no presumption of correctness on appeal. *Nelson v. Martin*, 958 S.W.2d 643, 646 (Tenn. 1997); *City of Tullahoma v. Bedford County*, 938 S.W.2d 408, 412 (Tenn. 1997). Thus, when we review a summary judgment, we view all the evidence in the light most favorable to the nonmoving party, and we resolve all factual inferences in the nonmoving party's favor. *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox County Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). We will find summary judgments appropriate only when the governing law applied to the uncontroverted facts permits only one conclusion — that the moving party is entitled to a judgment as a matter of law. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Belk v. Obion County*, 7 S.W.3d at 36-37.

## II.
### THE CLAIMS AGAINST MR. KING

American Cable's sole argument on appeal is that the trial court erred by granting a summary judgment dismissing its claims against Mr. King personally. Mr. King characterizes American Cable's tactics as nothing more than "a collection effort where the [creditor] attempted to bring in the president of one of the defendants simply to apply pressure."[2] Whatever American Cable's motives, we have determined that it has not demonstrated that it will be able to prove all the essential elements of its promissory fraud or negligent misrepresentation claims against Mr. King.

---

[2] This is not a novel or unheard of tactic among creditors' lawyers who have been known to refer to it as "inviting everyone to the party."

# A.
## PERSONAL LIABILITY OF CORPORATE OFFICERS

The law distinguishes between corporations and their officers and directors. Corporations are distinct legal entities. *General Tel. Co. v. Boyd*, 208 Tenn. 24, 29, 343 S.W.2d 872, 875 (1960); *Jackson Mobilphone Co. v. Tennessee Pub. Serv. Comm'n*, 876 S.W.2d 106, 115 (Tenn. Ct. App. 1993). Corporate officers and directors are considered agents of the corporation. As agents, they are not personally liable for the corporation's debts. *Schlater v. Haynie*, 833 S.W.2d 919, 924 (Tenn. Ct. App. 1991); *Bowman v. Home Med. Co.*, 7 Tenn. Civ. App. (Higgins) 265, 285 (1917); 3A James Solheim & Kenneth Elkins, *Fletcher's Cyclopedia on the Law of Private Corporations* § 1117 (rev. perm. ed. 1994).

The relation between corporations and their creditors is one based on contract. *Bowman v. Home Med. Co.*, 7 Tenn. Civ. App. (Higgins) at 287. A corporation's contracts do not personally bind the corporate officers who execute them. *Bill Walker & Assoc., Inc. v. Parrish*, 770 S.W.2d 764, 770 (Tenn. Ct. App. 1989). Ordinarily, an officer of a corporation can be held personally liable to a disappointed creditor of the corporation only if the officer's own conduct toward that party has been tortious. *Schlater v. Haynie*, 833 S.W.2d at 924; *Bowman v. Home Med. Co.*, 7 Tenn. Civ. App. (Higgins) at 285. When a corporate officer has engaged in tortious conduct, he or she may be liable to third-parties, and this liability is separate and independent from any liability the corporation may have. *Judds v. Pritchard*, No. 01A01-9701-CV-00030, 1997 WL 589070, at *3 (Tenn. Ct. App. Sept. 24, 1997) (No Tenn. R. App. P. 11 application filed); *Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 590-91 (Tenn. Ct. App. 1980).

It is beyond reasonable dispute that Mr. King cannot be personally liable to American Cable for ACI's contractual debt. Realizing this, American Cable argues that Mr. King's liability is not derived from ACI's contractual obligations, but rather is based on his own tortious acts. Accordingly, we turn to American Cable's promissory fraud and negligent misrepresentation claims against Mr. King.

# B.
## THE PROMISSORY FRAUD CLAIM

In order to make out a claim for promissory fraud against Mr. King, American Cable must allege and prove that he promised to perform some act in the future and that at the time he made the promise he had no intention to honor it. *Axline v. Kutner*, 863 S.W.2d 421, 423 (Tenn. Ct. App.1993); *Dobbs v. Guenther*, 846 S.W.2d 270, 274 (Tenn. Ct. App. 1992); *Oak Ridge Precision Indus., Inc. v. First Tenn. Bank*, 835 S.W.2d 25, 28 (Tenn. Ct. App. 1992). When faced with Mr. King's summary judgment motion, American Cable was obligated to demonstrate that it would be able to prove that Mr. King lacked any intention of paying American Cable during the summer of 1994 when he stated that American Cable's invoices would be paid.

The evidentiary record on this point is not particularly well developed. When we match the facts in the affidavits and depositions with American Cable's legal arguments, American Cable is

simply asking us (and presumably the jury) to infer that Mr. King must never have intended to pay its invoices because all of American Cable's invoices were not paid. In addition to its pronounced circularity, this argument brings to mind Tweedledee's definition of logic: "[I]f it was so, it might be; and if it were so, it would be; but as it isn't, it ain't."[3]

Getting at a person's intent can be a tricky proposition, made no less difficult because intent and action are usually separated in time and because intentions are sometimes only imperfectly carried into action. Actions are only crude gauges of the intent behind them, but they are frequently the only gauges available. In addition, people can sometimes be less than candid about their intentions or motives. Thus, judges and juries, lacking the ability to look into a person's mind, are left to deduce a person's intent from his or her actions or from other circumstantial evidence. *State v. Washington*, 658 S.W.2d 144, 146 (Tenn. Crim. App. 1983); *Burns v. State*, 591 S.W.2d 780, 784 (Tenn. Crim. App. 1979).

As in other cases where intent is an issue, a party may prove an intent to defraud using conduct or other circumstantial evidence. *Metropolitan Life Ins. Co. v. Hedgepath*, 182 Tenn. 296, 300, 185 S.W.2d 906, 907 (1945). However, proving fraudulent intent, like pleading fraud,[4] is particularly demanding. Outside of cases involving fiduciary relationships, fraud can never be presumed. *In re Ashley*, 5 B.R. 262, 266 (Bankr. E.D. Tenn. 1980); *Snapp v. Moore*, 2 Tenn. (2 Overt.) 236, 239 (1814); *Hiller v. Hailey*, 915 S.W.2d 800, 803 (Tenn. Ct. App. 1995). This rule is part of the law's larger, overarching view that where the same set of circumstances can give rise to opposite inferences, the law presumes innocent acts rather than intentional misconduct. *Memphis Cotton Press & Storage Co. v. Hanson*, 4 Tenn. App. 293, 301 (1926).[5] Thus, no inference of fraud should be made from circumstances that equally permit reasonable inferences of non-fraudulent conduct. *In re Homer*, 45 B.R. 15, 22 (Bankr. W.D. Mo. 1984).

Failure to perform a promise, standing alone, is not competent evidence that the promisor never intended to perform. *World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 670 (Tex. Ct. App. 1998). In the context of a promissory fraud claim, the mere fact that the promisor failed to perform the promised act is insufficient by itself to prove fraudulent intent. *Bryant v. Southern Energy Homes, Inc.*, 682 So. 2d 3, 5 (Ala. 1996) (affirming summary judgment); *see also In re Emery*, 52 B.R. 68, 70 (Bankr. E.D. Pa. 1985). The reason is that ordinarily, where nothing else is shown, mere failure to perform a promise can be as consistent with an honest intent as with a dishonest one. *Murphy v. T.B. O'Toole, Inc.*, 87 A.2d 637, 638 (Del. Super. Ct. 1952). Not every broken promise starts with a lie.

---

[3] Lewis Carroll, *The Annotated Alice: Alice's Adventures in Wonderland & Through the Looking Glass* 231 (1960).

[4] Tenn. R. Civ. P. 9.02 with regard to pleading fraud.

[5] This rule was reflected in the Latin maxim *odiosa non praesumitur* (odious things are not presumed). It was based on the charitable notion that individual deportment, for the most part, is consistent with the socially desirable ideal of good moral conduct. 1 Spencer A. Gard, *Jones on Evidence* § 3:11 (1972) (discussing the presumption in the context of criminal cases).

Mr. King's summary judgment motion required American Cable to demonstrate that it could present some competent and material evidence that Mr. King never intended to keep his promise when he made it. *Lonning v. Jim Walter Homes, Inc.*, 725 S.W.2d 682, 685 (Tenn. Ct. App. 1986). American Cable could have forestalled the summary judgment in two ways. First, it could have pointed to competent evidence tending to establish Mr. King's lack of present intent. Evidence merely inviting the fact-finder to guess at Mr. King's intent would not be competent. *Black Motor Co. v. Spicer*, 160 S.W.2d 336, 337 (Ky. Ct. App. 1942); *Farmer v. State*, 208 Tenn. 75, 78, 343 S.W.2d 895, 896 (1961) (observing that no person may be deprived of his or her rights by conjecture). Second, it could have pointed to evidence from which a fact-finder could reasonably infer that Mr. King did not intend to pay American Cable when he promised that it would be paid. To be permissible, however, such an inference cannot be based on speculation or conjecture. It must be reasonably drawn from the facts on which it purports to be based, and it must be made in accordance with correct and common modes of reasoning. *Patton v. L.O. Brayton & Co.*, 184 Tenn. 592, 598, 201 S.W.2d 981, 984 (1947).

American Cable's promissory fraud claim is supported by evidence of two facts: first, that Mr. King promised in May and August 1994 that American Cable would be paid for its work and second, that American Cable was not thereafter paid for its work in full. However, those facts, standing alone, cannot support the inference that Mr. King never intended for American Cable to be paid for its work. Without more, that conclusion would be nothing but speculation. To get past a summary judgment motion, a non-moving party must do much more than set the stage for wild guesses.

The record contains one other piece of evidence that could possibly shed some light on Mr. King's intentions when he promised American Cable that it would be paid for its work. This evidence consists of Edward Timmons's affidavit in which he states that Mr. King "asked me to verbally discredit the quality of the work of . . . American Cable Corporation so that [it] would not have to get paid for the work it had provided." If this statement was made before or contemporaneous with Mr, King's promises that American Cable's invoices would be paid, it would provide some evidence that Mr. King was looking for ways to avoid paying American Cable.

Mr. Timmons does not, however, state when this conversation took place. Taking Mr. Timmons's statements as true, which we must for summary judgment purposes, we do not know whether it occurred before or after Mr. King promised that American Cable's invoices would be paid or even whether it occurred after this lawsuit was filed. Thus, we are left to guess when the statement was made. Without more details, Mr. Timmons's statement that Mr. King wanted him to discredit American Cable's work is legally insufficient to create a factual dispute regarding Mr. King's intent in May and August 1994. American Cable failed to demonstrate that it could produce admissible evidence from which a trier-of-fact could reasonably conclude that Mr. King had no intention to pay American Cable when he promised that the company's invoices would be paid. Accordingly, the trial court correctly granted summary judgment on the promissory fraud claim.

## C.
### THE NEGLIGENT MISREPRESENTATION CLAIM

Almost two centuries ago, Chief Justice Best summarized the essence of a misrepresentation claim as follows: "He who affirms either what he does not know to be true, or knows to be false, to another's prejudice and his own gain, is, both in morality and law, guilty of falsehood, and must answer in damages." *Adamson v. Jarvis*, 4 Bing 66, 73, 130 Eng. Rep. 693, 696 (C.P. 1827). Today, these principles are embodied in the elements of the cause of action for negligent misrepresentation found in Restatement (Second) of Torts § 552 (1977) which has been adopted by the Tennessee Supreme Court. Thus, a plaintiff seeking damages for negligent misrepresentation must prove:

(1)     that the defendant was acting in the course of its business, profession, or employment, or in a transaction in which it had a pecuniary (as opposed to gratuitous) interest;

(2)     that the defendant supplied faulty information meant to guide others in their business transactions;

(3)     that the defendant failed to exercise reasonable care in obtaining or communicating the information; and

(4)     that the plaintiff justifiably relied upon the information provided by the defendant.

*Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997); *Ritter v. Custom Chemicides, Inc.*, 912 S.W.2d 128, 130 (Tenn. 1995); *John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 431 (Tenn. 1991).

American Cable's negligent misrepresentation claim against Mr. King hinges on the testimony of its vice president that "King stated that ACI and Brookridge were successful and financially strong developers of cable projects." Assuming, as we must, that Mr. King made this statement, it could only provide a basis for a negligent misrepresentation claim if (1) ACI's and Brookridge's financial condition was not successful and financially strong when Mr. King made the statement and (2) Mr. King did not use reasonable care in obtaining or communicating this information.

The appellate record contains absolutely no evidence of either ACI's or Brookridge's financial condition while American Cable was performing the work. The suit had been pending for more than one year by the time Mr. King filed his summary judgment motion – time enough for American Cable to ascertain the companies' financial condition by discovering their books and records. Yet, American Cable apparently presented no evidence regarding the companies' financial condition in May or August 1994 when Mr. King allegedly represented that their financial condition was solid. Thus, we find ourselves back on the road to surmise and conjecture. For all we can tell from this record, Mr. King's representations about the companies' financial condition may very well have been true when he made them.

As tested by a motion for summary judgment, American Cable's negligent misrepresentation claim has even less factual substance than its promissory fraud claim. Its affidavits opposing Mr. King's summary judgment motion contain no factual information about ACI's or Brookridge's finances in 1994. This information is essential because without it, American Cable cannot prove that the two entities' financial positions were not strong and that Mr. King failed to use reasonable care in obtaining or communicating the information regarding their financial condition. Accordingly, American Cable failed to come forward with competent evidence either to create a genuine factual dispute regarding ACI's and Brookridge's financial condition in 1994 or to demonstrate its ability to prove all the elements of its negligent misrepresentation claim. In light of these shortcomings, the trial court properly granted the summary judgment dismissing the negligent misrepresentation claims.

## III.

We affirm the order dismissing American Cable's claims against Vincent King and remand the case to the trial court for whatever further proceedings may be required. We also tax the costs of this appeal to American Cable Corporation and its surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE