# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### June 7, 1999 Session

## PAUL DAVID CREWS, ET AL. v. HOOTERS RESTAURANT OF NASHVILLE, INC., ET AL.

### Appeal from the Circuit Court for Davidson County
### No. 97C-2627     Barbara N. Haynes, Judge

---

### No. M1999-02813-COA-R3-CV - Filed May 2, 2001

---

This appeal involves two shootings during an attempted armed robbery of a restaurant that left one man dead and one man wounded. The parents of the deceased victim and the wounded victim and his wife filed suit in the Circuit Court for Davidson County against the restaurant and the persons who attempted to rob the restaurant, alleging that the restaurant had negligently failed to use reasonable care to protect its patrons from foreseeable harm. The trial court granted the restaurant a summary judgment and dismissed the negligence claim against it. The plaintiffs, relying on *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891 (Tenn. 1996), assert on this appeal that the trial court erred by granting the restaurant's summary judgment motion. We concur with the trial court's conclusion that the material facts are not in dispute and that the restaurant is entitled to a judgment as a matter of law because it demonstrated that the plaintiffs would be unable to prove an essential element of their case. Accordingly, we affirm the trial court's order dismissing the claims against the restaurant.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

Ben Boston, Charles W. Holt, Jr. and Christopher V. Sockwell, Lawrenceburg, Tennessee, for the appellants, Paul David Crews and Sue Crews, as surviving parents and next of kin of Gregory Paul Crews, and Nathan Orton and Katrina Orton.

Tom Corts, Nashville, Tennessee, for the appellees, Hooters Restaurant of Nashville, Inc.; Hooters of Nashville, L.P.; RMD Corporation d/b/a Hooters; and John Doe d/b/a Hooters.

Gregory D. Smith, Clarksville, Tennessee, for the appellee, Lane D. Locke.

**OPINION**

One of Nashville's several Hooters restaurants is located on Largo Drive near the Harding Road exit for Interstate 24. On August 17, 1996, Fred Washington, the manager, arrived at work at approximately 7:00 a.m. and began preparing for the restaurant's normal 11:00 a.m. opening. Part of his work included preparing and making the daily bank deposit of the receipts from the preceding day. By the time Mr. Washington was ready to go to the bank, three other employees had arrived and were preparing food in the kitchen. When Mr. Washington left for the bank at approximately 9:20 a.m., he left the front door of the restaurant unlocked because of the expected arrival of other employees. He had deactivated the restaurant's burglar alarm because other employees were working in the restaurant.

Approximately twenty minutes after Mr. Washington had left for the bank two armed gunmen, Antonio Brewster and James M. Grant, entered the restaurant and demanded the receipts from the previous day's business. When the employees told them that the manager had already left to deposit the money in the bank, the gunmen locked the employees in the restaurant's cooler and waited for Mr. Washington to return. When Mr. Washington entered the restaurant, he saw the gunmen and ran for the front door. The gunmen began shooting and chased Mr. Washington outside. Even though one of the shots struck him in the leg, Mr. Washington escaped to the parking lot with the gunmen in pursuit. The gunmen continued to shoot at Mr. Washington, and another bullet struck him in the calf and knocked him down. Even though he was unable to stand, Mr. Washington crawled into the road and flagged down a passing motorist.

At about the same time that Mr. Washington ran out of the front door of the restaurant, Gregory Crews and Nathan Orton pulled into the parking lot to find out whether the restaurant was open. Before they could get out of their truck, one of the gunmen began firing at them. Mr. Orton, the driver, opened his door and dove for the ground; however, Mr. Crews was shot before he could take cover. When Mr. Orton saw blood falling from Mr. Crews's mouth, he decided to run to a nearby Waffle House to call for help. As Mr. Orton ran, a bullet struck him the back near the left shoulder. After calling for help, Mr. Orton returned to his truck to help Mr. Crews. Regrettably, Mr. Orton's efforts to revive Mr. Crews were unsuccessful, and Mr. Crews died in the Hooters parking lot.

On August 18, 1997, Mr. Crews's parents and Mr. Orton and his wife filed suit in the Circuit Court for Davidson County against the owners and operators of the Hooters restaurant, Messrs. Brewster and Grant, Lane D. Locke who had driven the getaway car and Mark Thomas Springer who had assisted Messrs. Brewster and Grant in evading the police.[1] Hooters and Mr. Locke filed answers denying liability. Mr. Crews's parents and the Ortons took default judgments against Messrs. Brewster, Grant, and Springer. Later, following discovery, Hooters moved for a summary judgment. Mr. Crews's parents and the Ortons opposed the summary judgement motion with,

---

[1] *State v. Brewster*, No. M1999-00989-CCA-R3-CD, 2000 WL 549277, at *2 (Tenn. Ct. App. May 5, 2000) *perm. app. denied* (Tenn. Jan. 8, 2001).

among other things, an affidavit from a now-repentant Mr. Locke. The trial court granted the motion and dismissed the claims against Hooters. Mr. Crews's parents and the Ortons have perfected this appeal.

## I.
### THE STANDARD OF REVIEW

The standards for reviewing summary judgments on appeal are well-settled. Summary judgments are proper in virtually any civil case that can be resolved on the basis of legal issues alone. *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Church v. Perales*, 39 S.W.3d 149, 156 (Tenn. Ct. App. 2000). They are not, however, appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. Thus, a summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion – that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Goodloe v. State*, 36 S.W.3d 62, 65 (Tenn. 2001); *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *White v. Lawrence*, 975 S.W.2d 525, 529-30 (Tenn. 1998).

The party seeking a summary judgment bears the burden of demonstrating that no genuine dispute of material fact exists and that it is entitled to a judgment as a matter of law. *Shadrick v. Coker*, 963 S.W.2d 726, 731 (Tenn. 1998); *Belk v. Obion County*, 7 S.W.3d 34, 36 (Tenn. Ct. App. 1999). In order to be entitled to a judgment as a matter of law, the moving party must either affirmatively negate an essential element of the non-moving party's claim or establish an affirmative defense that conclusively defeats the non-moving party's claim. *Byrd v. Hall*, 847 S.W.2d at 215 n. 5; *Cherry v. Williams*, 36 S.W.3d 78, 82-83 (Tenn. Ct. App. 2000).

Once the moving party demonstrates that it has satisfied Tenn. R. Civ. P. 56's requirements, the non-moving party must demonstrate how these requirements have not been satisfied. *Nelson v. Martin*, 958 S.W.2d 643, 647 (Tenn. 1997). Mere conclusory generalizations will not suffice. *Cawood v. Davis*, 680 S.W.2d 795, 796-97 (Tenn. Ct. App. 1984). The non-moving party must convince the trial court that there are sufficient factual disputes to warrant a trial (1) by pointing to evidence either overlooked or ignored by the moving party that creates a factual dispute, (2) by rehabilitating evidence challenged by the moving party, (3) by producing additional evidence that creates a material factual dispute, or (4) by submitting an affidavit in accordance with Tenn. R. Civ. P. 56.07 requesting additional time for discovery. *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Byrd v. Hall*, 847 S.W.2d at 215 n. 6. A non-moving party who fails to carry its burden faces summary dismissal of the challenged claim because, as our courts have repeatedly observed, the "failure of proof concerning an essential element of a cause of action necessarily renders all other facts immaterial." *Alexander v. Memphis Individual Practice Ass'n*, 870 S.W.2d 278, 280 (Tenn. 1993); *Strauss v. Wyatt, Tarrant, Combs, Gilbert & Milom*, 911 S.W.2d 727, 729 (Tenn. Ct. App. 1995).

Summary judgments enjoy no presumption of correctness on appeal. *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000); *Burress v. Sanders*, 31 S.W.3d 259, 262 (Tenn. Ct. App. 2000). Accordingly, appellate courts must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997). We must consider the evidence in the light most favorable to the non-moving party, and we must resolve all inferences in the non-moving party's favor. *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001); *Terry v. Niblack*, 979 S.W.2d 583, 585 (Tenn. 1998); *Tamco Supply v. Pollard*, 37 S.W.3d 905, 908 (Tenn. Ct. App. 2000). When reviewing the evidence, we must determine first whether factual disputes exist. If a factual dispute exists, we must then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall*, 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998).

## II.
### THE LIABILITY OF HOOTERS FOR THE CRIMINAL ACTS OF THIRD-PARTIES

The ultimate fate of the negligence claims against Hooters hinges on whether Hooters owed a duty to protect persons who drove into its parking lot before the restaurant opened from the criminal acts of third-parties. Hooters asserts that it does not have this duty and, therefore, that it is entitled to a summary judgment because it has negated one of the essential elements of the negligence claim against it.[2] For their part, Mr. Crews's parents and the Ortons assert that Hooters had a duty to protect potential customers and the general public from the criminal acts of third-parties because of its employees' knowledge of criminal activity in the vicinity.

### A.

Owners and occupiers of business premises are not insurers of the safety of their customers, potential customers, or the general public. *Basily v. Rain, Inc.*, 29 S.W.3d 879, 883 (Tenn. Ct. App. 2000); *Shofner v. Red Food Stores (Tenn.), Inc.*, 970 S.W.2d 468, 470 (Tenn. Ct. App. 1997); *Hardesty v. Service Merchandise Co.*, 953 S.W.2d 678, 681 (Tenn. Ct. App. 1997). They do, however, have a duty to use reasonable care to protect customers and potential customers from unreasonable risks of harm. *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998); *Hudson v. Gaitan*, 675 S.W.2d 699, 703 (Tenn. 1984).

Determining whether a defendant owes a particular plaintiff a duty of care is a question of law for the court. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d at 89; *Jennings v. Case*, 10 S.W.3d 625, 627 (Tenn. Ct. App. 1999). A duty to act with due care arises when the risk of harm becomes unreasonable, and a risk of harm becomes unreasonable "if the foreseeable probability and gravity

---

[2] One of the essential ingredients in any common-law negligence action is the existence of a duty of care owed by the defendant to the plaintiff. *White v. Lawrence*, 975 S.W.2d at 529; *Dillard v. Vanderbilt Univ.*, 970 S.W.2d 958, 960 (Tenn. Ct. App. 1998).

of the harm posed by the defendant's conduct outweigh the burden upon the defendant to engage in alternative conduct that would have prevented the harm." *Rice v. Sabir*, 979 S.W.2d at 308; *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). In determining whether a risk of harm is unreasonable, the courts consider

> the foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct.

*Coln v. City of Savannah*, 966 S.W.2d 34, 39 (Tenn. 1998) *clarified in Cross v. City of Memphis*, 20 S.W.3d 642, 644 (Tenn. 2000); *McCall v. Wilder*, 913 S.W.2d at 153.

The extent that harm is foreseeable plays a pivotal role in this analysis. The courts will decline to impose a duty on a business to protect its customers from harm that is essentially unforeseeable but, by the same token, will impose a duty on a business to protect its customers from harm that is reasonably foreseeable. As the Tennessee Supreme Court has noted, "the degree of foreseeability needed to establish a duty of care decreases in proportion to the [increase in the] magnitude of the foreseeable harm." *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 433 (Tenn. 1994).

Until five years ago, the Tennessee Supreme Court had held that businesses did not have a duty to protect their customers from the criminal acts of third parties unless they knew or should have known that a criminal act was occurring or about to occur that posed an imminent probability of harm to its customers. *Cornpropst v. Sloan*, 528 S.W.2d 188, 198 (Tenn. 1975). In 1996, using the balancing analysis described above, the court abandoned this approach and thereby greatly expanded the duty of businesses to protect their customers from criminal acts of third parties. The court imposed on businesses the duty to protect their customers from the criminal acts of third-persons if the business knows, or has reason to know, that criminal acts against its customers on its premises are reasonably foreseeable. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d at 90; *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d at 902.

Under the Tennessee Supreme Court's new analysis, a business's duty did not rest solely on its knowledge that a particular criminal act was occurring or about to occur on its premises or even on the business's awareness of prior similar criminal acts on its premises. Rather, the court held that the foreseeability of a criminal act could be premised on prior criminal acts occurring "in the immediate vicinity of the defendant's premises." *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d at 902. Thus, the court held that, when conducting a foreseeability analysis, the courts must consider "the location, nature, and extent of previous criminal activities and their similarity, proximity, or other relationship to the crime giving rise to the cause of action." *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d at 902.

**B.**

We must apply the balancing test used in *McClung* and *Staples* to determine whether Hooters should have foreseen that its restaurant might become the scene of an armed robbery and, therefore, should have taken steps to protect its potential customers or members of the public in its parking lot from the harm that might befall them if the armed robbers used their weapons. In pursuing these questions, we must view the evidence in the light most favorable to Mr. Crews's parents and the Ortons. Even when we do so, the only reasonable conclusion to be drawn from their proof is that they have been unable to establish facts sufficient to warrant a conclusion that Hooters had a duty to protect its potential customers from the possible consequences of a botched armed robbery before the restaurant had opened for business.

This record contains no evidence of significant or recent criminal activity at the restaurant itself. In fact, it is undisputed that no violent crimes against person or property had occurred at the restaurant other than one attempted burglary occurring one night after the restaurant had closed. There is no evidence regarding when this burglary occurred. In addition, the owners and operators of Hooters provided uncontradicted evidence that there had never been a day-time armed robbery at any of the twenty-nine Hooters restaurants in the four-state franchise area.

Knowing that they could not base their case on the criminal activity at the restaurant itself, Mr. Crews's parents and the Ortons based their claim on their assertion that Hooters should have taken more security precautions because of their knowledge regarding the incidence of crime in the vicinity of the restaurant. However, their evidence is far too general to provide a foundation for their claim. Unlike the plaintiffs in the *McClung* and *Staples* cases who produced specific information regarding crimes on and around the defendant's business premises,[3] Mr. Crews's parents and the Ortons came forward with little precise evidence regarding the nature, extent, and proximity of other crimes in the area.

The evidence regarding the incidence of crime in the vicinity of the restaurant takes two forms. The first consists of Hooters's answers to the plaintiffs' interrogatories in which it concedes that its manager and employees were aware from newspaper reports and conversations with customers about unspecified crimes being committed in the area where the restaurant was located. These answers provided no information regarding the nature or number of the other crimes or where and when these crimes occurred. This sort of general awareness of criminal activity in the community is not the sort of knowledge that would trigger a restaurant's obligation to take additional precautions to protect the persons who enter its parking lot.

---

[3]Even though the Tennessee Supreme Court has rejected the "prior instances approach" in cases of this sort, it has observed that prior criminal acts will inevitably factor into its balancing analysis. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d at 90 n.3. In *Staples*, the plaintiff presented evidence of 286 criminal incidents occurring at the Hamilton Place Mall during the fourteen months immediately preceding the plaintiff's injury. *Staples v. CBL & Assocs., Inc.*, 15 S.W.2d at 90, 90 n.3. In *McClung*, the plaintiff introduced evidence of 164 criminal incidents that had occurred on or near the Delta Square Shopping Center parking lot within the seventeen months prior to the plaintiff's injury. *McClung v. Delta Square Ltd. Parthership*, 937 S.W.2d at 903.

The second piece of evidence regarding the criminal activity in the area is a sworn statement by a sales manager of an armored car service stating the crime rate in the Harding Road area where the restaurant is located "would be considered definitely higher than average or higher than normal." The opinion of the sales manager of the armored car service must be excluded under Tenn. R. Civ. P. 56.06 because he failed to demonstrate that he is competent to provide an opinion regarding the crime rate in the area around the restaurant. First, he did not demonstrate that he possesses the scientific, technical, or other specialized knowledge that would enable him to provide an expert opinion that would assist the trier of fact. Tenn. R. Evid. 702. Second, he failed to demonstrate that his opinion about the crime rate in the area is based upon some relevant scientific method or data rather than on his own speculation. *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 265 (Tenn. 1997). Without this opinion, the sales manager's sworn statement contains no other relevant information concerning the number or nature of the other crimes in the area or where or when these other crimes occurred.

Finally, Mr. Crews's parents and the Ortons submitted Mr. Locke's affidavit. Mr. Locke, who drove the getaway car for Messrs. Brewster and Grant, stated that he and his confederates had heard from a "reliable source" that Hooters kept money on its premises overnight. He also stated that he observed Hooters operation and that Hooters was "much more lackadaisical in its security efforts than the other restaurants/businesses in the immediate area/vicinity" and that he and his associates would not have attempted to rob Hooters if there had been more visible security. Mr. Locke also observed that had Mr. Washington not escaped into the parking lot when he encountered the robbery "gunfire would not have occurred, and the two boys outside the restaurant . . . would not have been shot."

Mr. Locke's affidavit has little, if any, relevance to the question at hand. This case is not about whether Hooters took adequate precautions to protect itself and its employees from robbery or burglary, but rather whether Hooters took sufficient precautions to protect its customers and persons entering its parking lot before hours from the criminal acts of third parties in light of its knowledge of the incidence of crime on its property and in the surrounding area. While Mr. Locke's affidavit provides some interesting insights into the motives and modus operandi of the gunmen who robbed Hooters, it sheds little light on what Hooters and its employees knew or should have known about the incidence of crime in the area surrounding the restaurant.

The facts surrounding the botched armed robbery at the Hooters restaurant and the tragic death of Mr. Crews and the injury of Mr. Orton are essentially undisputed. Based on these facts, we have concluded that Hooters is entitled to a judgment as a matter of law because it demonstrated that Mr. Crews's parents and the Ortons will be unable to prove that Hooters owed a duty to Messrs. Crews and Orton to protect them from the criminal acts of Messrs. Brewster, Grant, Locke, and Springer. Accordingly, we find that the trial court correctly granted the summary judgment dismissing the negligence claims against Hooters.

**III.**

We affirm the summary judgment dismissing the negligence claims against Hooters and remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal, in equal proportions, to Paul David Crews and Sue Crews and to Nathan Orton and Katrina Orton and their surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE