**Albert M. ALEXANDER, M.D.,
Plaintiff/Appellant,**

v.

**MEMPHIS INDIVIDUAL PRACTICE
ASSOCIATION, Defendant/Appellee.**

Supreme Court of Tennessee,
at Jackson.

Nov. 8, 1993.
Order Denying Rehearing Feb. 7, 1994.

David Wade, Richard M. Carter, John S. Golwen, Memphis, for appellant.

Leo Bearman, Jr., Charles G. Walker, R. Mark Glover, Memphis, for appellee.

## OPINION

O'BRIEN, Justice.

The plaintiff/appellant, Albert M. Alexander, M.D., filed this action in Shelby Circuit Court against the Memphis Individual Practice Association alleging tortious interference with prospective economic advantage by first denying, then delaying, and finally accepting Dr. Alexander's membership application to the association. After extensive pre-trial discovery, the trial court granted summary judgment to the defendant. The Court of Appeals affirmed the judgment of the trial court and, for the following reasons, we affirm the judgment of both lower courts.

The appellant presents two issues for review. First, whether the tort of intentional interference with prospective economic advantage is a recognized cause of action in Tennessee. Second, whether the defendant is immune from suit under the provisions of T.C.A. 63-6-219, which governs the actions of medical review committees. The defendant Association urges us not to consider the issue of tort of intentional inference with prospective economic advantage because nei-

ther the trial court nor the Court of Appeals dealt with the question. We also pretermit this issue because it is not dispositive of the case.

Dr. Alexander is a sole practitioner physician in Memphis specializing in obstetrics and gynecology with an emphasis on the treatment of infertility. Memphis Individual Practice Association (MIPA) is a not-for-profit corporation that contracts with Memphis area health maintenance organizations (HMOs) to provide primary health care services to subscribers of the HMOs. The HMOs pay for their subscriber's health care only when treated by a physician belonging to the MIPA.

In February of 1984, Dr. Alexander applied for membership to the MIPA. During the association's March 1984 meeting, Dr. Alexander's application was considered and denied. His name was then placed on a waiting list for future consideration. At the time, MIPA was comprised of several hundred physicians, including fifty-nine OB/GYNs.

In response to written inquiry by Dr. Alexander, in April 1986, the MIPA membership committee reconsidered his application during its June 1986 meeting. Once again, the committee determined that there was no need for Dr. Alexander's services in the organization and denied the application. In July 1986, the MIPA notified Dr. Alexander that he was denied membership, but that his application would remain on file for future consideration.

In February of 1987, Alexander again wrote to MIPA inquiring about the status of his application. This time, during the April 1987 meeting, the membership committee approved the application. The committee's recommendation was placed on the April agenda of the MIPA board of director's meeting. However, because of a clerical error, Dr. Alexander's name was inadvertently left off the approval list sent to the board of directors by the membership committee. As a result of the error, the committee advised Dr. Alexander that he had been denied membership and his application remained on the waiting list. The clerical error was eventually discovered, and Dr. Alexander's applica-

tion was approved by MIPA's board of directors in November of 1987.

Dr. Alexander alleges that MIPA delayed approval of his application as punishment for testifying as a plaintiff's expert in medical malpractice lawsuits in Kentucky between 1978 and 1988. The appellant bases his allegation upon statements made by Dr. Prentiss Turman, a member of MIPA's membership committee.

In his deposition, Dr. Turman stated that, as the senior OB/GYN member of the committee, his opinion was actively sought on whether Dr. Alexander's application should be recommended for approval.

While Dr. Turman abstained from voting whenever Dr. Alexander's application was being considered, he did state in deposition that he had offered his opinion as to the appellant's qualifications and the lack of MIPA's need for another OB/GYN. During deposition, Dr. Turman stated:

... my opinion of Albert, and he knows this, was that over the years I've known him I thought he was a little bit of a maverick and would be a little hard to bridle as far as cost containment, cost efficiency was concerned which we were pretty heavy in at the time, that he had a little bit of anti-establishment or anti-systems personality about him and that he had begun to, according to talk that almost everyone had heard, to testify for hire for plaintiffs in medical malpractice suits.

Those were—that was my speech each time I was looked to, and I never voted pro or con on Albert's being removed from the waiting list and placed on active duty. But I don't know how any of the rest of them felt, but if that's what kept him on the waiting list, then so be it.

We had no need in that area for a new OB/GYN office, so the question was not whether he was to be admitted as a member, as to whether we needed a reason to take him off the waiting list. There was never any debate. There was really no need for a new office, and there was no other side to it. Nobody came and talked for Albert including Albert.

The appellant alleges further that during the time his membership application was des-

ignated to MIPA's waiting list, other OB/GYNs whose applications were submitted subsequent to his, were admitted to the association. The appellant contends that the acceptance of the applications of other OB/GYNs, while his application was denied, is indicative of malice and bad faith on the part of the MIPA membership committee.

We turn to the issue of defendant's statutory immunity, the parties have stipulated that MIPA is a "medical review committee" as defined in T.C.A. 63–6–219, enacted as the "Tennessee Peer Review Law of 1967." In conjunction with the stipulation we consider if the actions of MIPA are subject to the provisions of that statute. T.C.A. 63–6–219 states in pertinent part:

> ... any person who participates with or assists a medical review committee with respect to its functions, or any other individual appointed to any committee ... *is immune from liability* to any patient, individual or organization for furnishing information, data, reports or records, to any such committee or for damages resulting from decision, opinions, actions and proceedings rendered, entered or acted upon by such committees undertaken or performed within the scope or function of the duties of such committees, *if made or taken in good faith and without malice and on the basis of facts reasonably known or reasonably believed to exist.*

■ MIPA contends that the comments of Dr. Turman, made during the MIPA membership committee meetings, were in connection with his official duties and were based upon facts reasonably known to exist and that the comments were made without malice and in good faith. Therefore, the defendant asserts that it is immune from liability by the terms of T.C.A. 63–6–219 and is entitled to summary judgment as a matter of law.

■ The intent of the summary judgment rule is to provide an expeditious and inexpensive means of concluding litigation where there is no dispute as to the material facts. The rule may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. T.R.Civ.P. 56.03. A party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for directed verdict. When a trial court allows sufficient time for discovery, after which the non-moving party is unable to demonstrate sufficient evidence to withstand a directed verdict, summary judgment is appropriate. *Byrd v. Hall,* 847 S.W.2d 208, 213 (Tenn.1993). Further, if the non-moving party fails to establish the existence of an essential element, there can be no genuine issue as to any material fact since failure of proof concerning an essential element of the cause of action necessarily renders all other facts immaterial. *Celotex Corporation v. Catrett* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The appellant has not shown that the comments made by Dr. Turman, along with MIPA's delay in accepting his membership application, were committed with intentional malice and bad faith. The record reflects that MIPA's decision to deny membership to Dr. Alexander was made based upon facts reasonably known to exist or reasonably believed to exist. Without evidence of malice and bad faith the appellant fails to prove the essential element that would remove the Association's immunity under T.C.A. 63–6–219.

Reviewing the record in the light most favorable to the appellant, we find the trial court correct in granting the defendant's motion for summary judgment. Costs of this appeal are taxed to the appellant.

REID, C.J., and DROWOTA and ANDERSON, JJ., concur.

DAUGHTREY, not participating.

### ORDER ON PETITION TO REHEAR

Plaintiff has filed a Petition for Rehearing asserting, inter alia, that the Court overlooks or misapprehends facts in the record and that the decision improperly places the burden of proof on him in certain aspects of the case.

We have carefully considered the issues raised and, having done so, adhere to the conclusions reached in the Opinion.

Accordingly, the petition is denied at the cost of petitioner.