# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

March 5, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

KENNETH LARRY MANGUM,  )
            )
  Plaintiff/Appellant,    )
            )  Franklin Circuit
VS.           )  No. 9739-CIV
            )
            )  Appeal No.
GOLDEN GALLON CORPORATION, )  01A01-9709-CV-00459
            )
  Defendant/Appellee.    )

## APPEAL FROM THE CIRCUIT COURT FOR FRANKLIN COUNTY
## AT WINCHESTER, TENNESSEE

### THE HONORABLE BUDDY PERRY, JUDGE

For the Plaintiff/Appellant:

James D. Lane, II
Ray, VanCleave & Jackson
Tullahoma, Tennessee

For the Defendant/Appellee:

H. Richard Marcus
Fleissner, Cooper, Marcus & Quinn
Chattanooga, Tennessee

## AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This premises liability action involves a disabled person who was injured when he tripped on a floor mat while entering a convenience market in Decherd. The patron's suit against the market, originally filed in the Chancery Court for Franklin County but later transferred to the Circuit Court for Franklin County, alleged that the market had created a dangerous condition, especially for patrons using crutches, by placing the floor mat at its entrance. The market moved for summary judgment, relying on the deposition testimony of the patron, two employees of the market, and the market's surveillance camera videotape of the patron's fall. The trial court granted the motion, and the patron has appealed. We have determined that the market is entitled to a judgment as a matter of law and, accordingly, affirm the summary judgment.

## I.

Mr. Mangum is an accountant employed by Aerospace Center Support at the Arnold Engineering Development Center near Tullahoma. For many years, he has been required to wear leg braces and to use Loftstrand crutches because of a congenital birth defect that caused deformity and muscle weakness in his legs. Mr. Mangum's disability makes it difficult for him to lift up his legs when he walks, and he must carefully negotiate steps, doorways, and other obstacles to avoid falling. He has, however, become adept at using his crutches. He is also aware of his limitations and tries to avoid situations that might cause him to fall.

In addition to his regular employment, Mr. Mangum performs accounting work for private clients. He took a vacation day from work on November 10, 1995, to meet with one of these clients. After concluding his meeting around mid-day, he stopped at the Golden Gallon Market on Highway 41A in Decherd to use the restroom and to purchase a beer that he planned to drink later with his lunch.

Patrons enter the Golden Gallon Market through double glass doors that open only to the outside. Just inside the doors is a heavy, rubber-backed red floor mat with a black rubber border that is plainly visible through the glass doors. The mat, which is approximately six feet long and four feet wide, is supplied by National Dust Control Service. It is placed at the front door to protect the tile floor from heavy foot traffic and to provide the patrons with somewhere to wipe their shoes in inclement weather. The edge of the mat is approximately one inch from the metal door jam of the front doors. The mat itself consists of industrial

grade carpet with little or no nap. The market's employees are responsible for keeping the mat clean and for making sure that it is lying flat on the floor without wrinkles or creases that might cause patrons to fall.

Mr. Mangum parked his automobile close to the market's front doors. After discarding some trash in an outside container, he entered the market through the right hand glass door. Mr. Mangum pulled the door toward him, held the door open with this right crutch, and then placed his left crutch inside the store. Then he pulled his feet inside the store and brought his right crutch into the market. Immediately after Mr. Mangum began to move forward, the toe of his left shoe caught the edge of the mat and he fell forward into the market. He fractured his left shoulder in the fall. The entire incident was videotaped by the market's surveillance camera.

The employees of the market came to Mr. Mangum's assistance. He declined their offer to summon an ambulance. After collecting himself on the floor for several minutes, Mr. Mangum asked the employees to assist him to arise from the floor, to bring him the beer he had originally stopped to purchase, and to return to his automobile. Although shaken, Mr. Mangum did not leave the market until he paid for the beer. After briefly resting in his automobile, Mr. Mangum drove himself back to Murfeesboro. Upon arriving home, Mr. Mangum realized that he was injured and drove himself to the emergency room in Murfreesboro.

In April 1996, Mr. Mangum filed suit against the Golden Gallon Corporation ("Golden Gallon") in the Chancery Court for Franklin County. After the suit was transferred to the Circuit Court for Franklin County, Golden Gallon moved for summary judgment asserting that Mr. Mangum could not prove the existence of a dangerous condition, that it did not owe a duty to warn Mr. Mangum of the condition of the mat, and that Mr. Mangum's equal or superior knowledge of the mat's condition barred his recovery. Golden Gallon supported its motion with Mr. Mangum's deposition, the depositions of the market's manager and assistant manager, and the videotape of Mr. Mangum's fall. The trial court granted the summary judgment, and Mr. Mangum has perfected this appeal.

## II.

We turn first to the standard by which we review a trial court's decision to grant a summary judgment. Summary judgments enjoy no presumption of correctness on appeal. *See City of Tullahoma v. Bedford County*, 938 S.W.2d 408, 412 (Tenn. 1997); *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 894 (Tenn. 1996). Accordingly, we must make a fresh determination concerning whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Mason v. Seaton*, 942 S.W.2d 470, 472 (Tenn. 1997). Summary judgments are appropriate only when there are no genuine factual disputes with regard to the claim or defense embodied in the motion and when the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04; *Moon v. St. Thomas Hosp.*, ___ S.W.2d ___, ___ (Tenn. 1998)[1]; *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

Courts presented with a summary judgment motion must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997); *Mike v. Po Group, Inc.*, 937 S.W.2d 790, 792 (Tenn. 1996). Thus, a summary judgment should be granted only when the undisputed facts reasonably support one conclusion – that the moving party is entitled to a judgment as a matter of law. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d at 26. A party may obtain a summary judgment by demonstrating that the nonmoving party will be unable to prove an essential element of its case, *see Byrd v. Hall*, 847 S.W.2d 208, 212-13 (Tenn. 1993), because the inability to prove an essential element of a claim necessarily renders all other facts immaterial. *See Alexander v. Memphis Individual Practice Ass'n*, 870 S.W.2d 278, 280 (Tenn. 1993); *Strauss v. Wyatt, Tarrant, Combs, Gilbert & Milom*, 911 S.W.2d 727, 729 (Tenn. Ct. App. 1995).

### III.

Mr. Mangum will recover in this premises liability action only if he proves (1) that Golden Gallon owed him a duty of care, (2) that Golden Gallon's conduct fell below the applicable standard of care and amounted to a breach of its duty, (3) that he suffered an injury, (4) that Golden Gallon's conduct was the cause-in-fact of his injury, and (5) that Golden Gallon's conduct was the proximate or legal cause of his injury. *See Coln v. City of Savannah*, 966 S.W.2d 34, 39 (Tenn. 1998). Mr. Mangum's failure to demonstrate that he will be able to prove each of these elements at trial will entitle Golden Gallon to a summary judgment. *See Byrd v. Hall*, 847 S.W.2d at 215-16.

---

[1]*Moon v. St. Thomas Hosp.*, No. 01S01-9710-CV-00218, 1998 WL _____, at *___ (Tenn. Dec. 21, 1998) (For Publication).

As in other premises liability cases, our inquiry begins with determining the existence and nature of Golden Gallon's duty. As a general matter, the owner or possessor of the premises owes a general duty to its customers to exercise reasonable care to make the premises safe. *See Hudson v. Gaitan*, 675 S.W.2d 699, 703 (Tenn. 1984). More specifically, the owner or possessor has a duty to remove or to warn customers of any latent or hidden dangerous condition that the owner knows or should reasonably know about. *See Smith v. Inman Realty Co.*, 846 S.W.2d 819, 823 (Tenn. Ct. App. 1992). Whether the owner's or possessor's duty encompasses the duty to guard against the acts set forth in the complaint involves an analysis of the foreseeablity of the risk to which the customer was exposed. *See Coln v. City of Savannah*, 966 S.W.2d at 43; *Eaton v. McClain*, 891 S.W.2d 587, 594 (Tenn. 1994).

It is axiomatic that no duty can arise in cases of this sort unless a dangerous condition exists. Mr. Mangum's complaint, as we understand it, contains alternative allegations concerning the existence of a dangerous condition. First, Mr. Mangum asserts that placing the mat at the market's front door created a dangerous condition for the market's patrons, especially for its disabled patrons. Second, he asserts that the market employees had permitted the mat to bunch up or wrinkle and, therefore, that a wrinkled mat was a dangerous condition for all the market's patrons.

### THE FLOOR MATS THEMSELVES

We can quickly dispose of Mr. Mangum's first theory. Placing a mat at the entrance of a business establishment does not create a dangerous condition as a matter of law. The proof in this record, like common experience, demonstrates that mats like the one involved in this case are ubiquitous. They are frequently placed in commercial and business establishments in high traffic areas to protect the floor and to provide persons entering the premises with somewhere to wipe their shoes. Mr. Mangum himself concedes that he encounters these mats daily at his place of employment and elsewhere. Accordingly, without some evidence that these large, rubber-backed floor mats, even when properly placed, are inherently dangerous, Mr. Mangum's claim that their use creates a dangerous condition must fail as a matter of law.[2]

---

[2]The record contains evidence of only one prior incident involving a patron who tripped over the mat. The market's assistant manager testified that a long time before Mr. Mangum's fall, a female patron stumbled but did not fall when she caught the edge of the mat with her foot and "flipped it up." The assistant manager also stated that it was not easy to flip up the edge of the mat because of the "real thick rubber" on the bottom of the mat. In light of the number of patrons entering and leaving the premises on a daily basis, no reasonable person would conclude that this single incident establishes that the mat creates a dangerous condition.

Even if these mats are not dangerous to the general public, Mr. Mangum asserts that they are dangerous conditions for persons with disabilities. However, Mr. Mangum has failed to demonstrate that he will be able to substantiate this assertion at trial. He conceded in his deposition that he encounters these mats on a daily basis and that he navigates across them without incident. In addition, he has not proffered any evidence regarding the frequency of incidents in which mats of this sort cause persons with disabilities to fall or that the use of mats such as the one involved in this case is contrary to any state or federal accessibility requirement or building code. Thus, we conclude that Mr. Mangum has likewise failed to demonstrate that he will be able to prove at trial that properly placed floor mats create a dangerous condition for persons with disabilities.

### GOLDEN GALLON'S MAINTENANCE OF ITS FLOOR MATS

Mr. Mangum's second theory is that Golden Gallon's employees did not properly maintain the mat because they permitted it to bunch up or wrinkle and that their failure to maintain the mat created a dangerous condition. For the purposes of this claim, we find that owners and possessors of property who place floor mats at the entrance to their buildings have a duty to maintain these mats in a reasonably safe condition. We also find that an improperly maintained floor mat – one that is wrinkled, bunched up, worn through, or torn – could foreseeably cause persons, especially disabled persons with limited mobility, entering or leaving the building to fall. Therefore, an improperly maintained mat could be a dangerous condition that could expose the owner or possessor of the premises to liability.

The mere fact that Mr. Mangum tripped and fell when he entered the market is not proof that Golden Gallon was negligent. *See Williams v. Jordan*, 208 Tenn. 456, 464, 346 S.W.2d 583, 586 (1961); *Underwood v. HCA Health Servs. of Tenn., Inc.*, 892 S.W.2d 423, 426 (Tenn. Ct. App. 1994) (stating that evidence of injury alone is not sufficient to prove that the injury was caused by someone's negligence). Thus, even if an improperly maintained floor mat could be a dangerous condition, Mr. Mangum cannot succeed without proof that the Golden Gallon employees did not properly maintain the floor mat and that the floor mat was in a dangerous condition when he entered the market. As we view this record, Mr. Mangum failed to demonstrate that he will be able to carry his burden of proof with regard to either issue.

Both Golden Gallon employees who were at the market when Mr. Mangum fell stated in their depositions that they have a policy of making sure that the floor mat is clean, that it is in the proper location, and that it is lying flat on the floor. The manager testified that the policy is to keep the mat inside the store and to make sure that it "stays swept" and "flat."

The assistant manager testified that she had the responsibility on a daily basis to inspect the mat, to sweep it, and to "make sure . . . it's in position." She also testified that she could see the mat from her position at the cash register and that it had not bunched up against the door when Mr. Mangum entered the market.

The videotape of Mr. Mangum's fall buttresses the employees' testimony. It begins five minutes before Mr. Mangum entered the market and contains a clear view of the mat on the floor adjacent to the door. The mat is lying flat on the floor without any apparent wrinkles or creases and without being bunched up against the door jam. Prior to Mr. Mangum's arrival at the market, four customers entered or exited the market without difficulty and without disturbing the mat.

Mr. Mangum entered the market through the right hand door. He held the door open with this right crutch and then moved his left crutch inside the door. As he brought his feet into the market, the toe of his left shoe dragged under the front edge of the mat. When Mr. Mangum moved his weight forward, both of his feet became entangled in the mat, causing him to lose his footing and to fall on his left shoulder. The videotape shows that the mat returned to its original position after Mr. Mangum fell. Mr. Mangum remained in the market for approximately eleven minutes following his fall. After paying for his beer, he left the store unaided by walking across the mat where he had tripped and out the same door through which he had entered.

Mr. Mangum could not refute the testimony of the market's employees that the mat was lying flat on the floor. He admitted that he could not state under oath whether the mat was flat or not. However, he believes that the mat "must have been up some" because, as he explained, "I walk over those mats every day in going in and out of stores of this type, going in and out of my office, any kind of department stores, and I've never pushed one of them [the mats] up before." Mr. Mangum also conceded that if there were no wrinkles or creases in the mat, Golden Gallon did not do anything that would have caused him to fall.

We have considered the undisputed facts in the light most favorable to Mr. Mangum and have determined that reasonable minds can only conclude, based on these facts, that Golden Gallon's placement and maintenance of the floor mat at the entrance to its market did not create a dangerous condition. In the absence of proof of a dangerous condition on its premises, Golden Gallon is entitled to a judgment as a matter of law because Mr. Mangum has failed to demonstrate that he will be able to prove one of the essential elements of his claim on which he will bear the burden of proof at trial.

## IV.

We affirm the summary judgment and remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal to Kenneth Larry Mangum and his surety for which execution, if necessary, may issue.

-8-

_____
WILLIAM C. KOCH, JR., JUDGE


CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
WALTER W. BUSSART, SPECIAL JUDGE