IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 6, 2007 Session

## XEROX CORPORATION v. DIGITAL EXPRESS GRAPHIC, LLC

**Appeal from the Chancery Court for Davidson County**
**No. 04-2508-I     Claudia Bonnyman, Chancellor**

---

**No. M2006-02339-COA-R3-CV - Filed May 22, 2008**

---

This is an appeal from summary judgment granted in favor of the lessor in an action to collect the accelerated unpaid balance of $191,945.47 allegedly due under a lease agreement for digital printing equipment. After careful review of the record, we find that the lessee failed to meet its burden of proving the existence of a dispute of material fact that would preclude summary judgment. We affirm the judgment of the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which HOLLY KIRBY, J., and JON KERRY BLACKWOOD, SP.J., joined.

Joseph M. Dalton, Nashville, Tennessee, for the appellant, Digital Express Graphic, LLC.

Christopher W. Conner, Maryville, Tennessee, for the appellee, Xerox Corporation.

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

On January 8, 2001, Digital Express Graphic, LLC ("Digital Express") entered into a lease agreement ("Agreement") with Xerox Corporation for the lease of digital printing equipment. The Agreement required monthly payments of $7,614.81 for a term of five years; these payments included fees due under a separate maintenance agreement.

According to Digital Express, the equipment began to malfunction approximately eight months into the lease term, generating inconsistent color prints. Xerox technicians responded to numerous service calls but were unable to fix the problems. Digital Express claims it lost customer accounts as a result of the printer problems and quit using the equipment around February 1, 2003.

Digital Express President T.J. Gill sent a letter to Xerox dated January 21, 2003, which outlined the color consistency problems and the frequent service calls and indicated that Digital Express had recently stopped making payments to Xerox under the Agreement. Mr. Gill also stated that Digital Express was placing the equipment in its warehouse for pickup as of February 1, 2003. Apparently, the equipment at issue was not retrieved by Xerox until June 2006.

The Agreement contained a provision which limited the remedies available to Digital Express in the event of equipment failures to either the repair or the replacement of the equipment:

> REMEDY. If Xerox is unable to maintain the equipment as described above, Xerox will, *as your exclusive remedy*, replace the Equipment with an identical product or, at Xerox' option, another product of equal or greater capabilities. This replacement product shall be subject to these same terms and conditions.

(emphasis added). In the event that Digital Express breached the Agreement, paragraph 13 enabled "Xerox, in addition to its other remedies (including the cessation of Basic Services), [to] require immediate payment of (a) all amounts then due[.]" The Agreement also included a paragraph captioned "LIMITATION OF LIABILITY AND ASSIGNMENT" which stated:

> Neither [party] shall be liable to the other for any direct damages greater than the amount hereunder or for any special, indirect, incidental, consequential or punitive damages arising out of or relating to this Agreement, whether the claim alleges tortious conduct (including negligence) or any other legal theory.

On August 23, 2004, Xerox filed a Complaint on Sworn Account in the Chancery Court for Davidson County pursuant to Tenn. Code Ann. § 24-5-107[1] seeking judgment against Digital Express in the amount of $191,945.47 plus costs, interest, and attorney's fees.[2] Xerox claimed it was owed the accelerated balance due under the Agreement for Digital Express's breach of the Agreement.

---

[1]Tenn. Code Ann. § 24-5-107(a) states:

An account on which action is brought, coming from another state or another county of this state, or from the county where suit is brought, with the affidavit of the plaintiff or its agent to its correctness, and the certificate of a state commissioner annexed thereto, or the certificate of a notary public with such notary public's official seal annexed thereto, or the certificate of a judge of the court of general sessions, with the certificate of the county clerk that such judge is an acting judge within the county, is conclusive against the party sought to be charged, unless that party on oath denies the account or except as allowed under subsection (b).

[2]The sworn affidavit listed the current balance due, interest accrued, and attorney's fees totaling $231,727.32.

Digital Express answered and filed a counter-complaint claiming breach of contract, breach of warranty, willful misrepresentation, and violation of the Tennessee Consumer Protection Act.[3] Alleging it lost numerous clients as a result of the machine's malfunction, Digital Express sought damages for lost profits, past and future, past payments under the Agreement and prejudgment interest and costs. Xerox then moved for summary judgment[4] which the trial court granted on August 30, 2006. Xerox was awarded damages in the amount of $191,945.47 and instructed to file a motion seeking reasonable attorney fees and prejudgment interest. Digital Express's counterclaims were dismissed.

On appeal, Digital Express takes exception to the grant of summary judgment and the dismissal of its counterclaims, challenging the trial court's interpretation of the Agreement's limitation of remedies and disclaimer of warranties and dismissal of its claim under the Consumer Protection Act.

## II. ANALYSIS

### A. STANDARD OF REVIEW

A number of Digital Express's arguments on appeal center on the construction or interpretation of the Agreement. Issues relating to the construction or interpretation of written instruments are issues of law rather than issues of fact. *Cellco P'ship v. Shelby County*, 172 S.W.3d 574, 586 (Tenn. Ct. App. 2005). As with issues of law, we review a trial court's grant of summary judgment with no presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). Our task is to review the record to determine whether the requirements for granting summary judgment have been met. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997).

Summary judgment is appropriate only when the moving party demonstrates that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). Once the moving party has shown that there is no genuine issue of material fact, the nonmoving party must then demonstrate the contrary; if the moving party's motion is properly supported, the nonmoving party may not rest upon the mere allegations or denials of his pleading but must respond setting forth specific facts showing that there is a genuine issue for trial. Tenn. R. Civ. P. 56.06; *Byrd*, 847 S.W.2d at 210. In examining the record on appeal, we view all the evidence in a light most favorable

---

[3] A default judgment was previously entered against Digital Express and later set aside, which contributed to the delay in the litigation of this matter.

[4] Xerox's motion for summary judgment and supporting memorandum of law are not included in the record on appeal; however, Xerox's statement of material facts and Digital Express's response to Xerox's statement of material facts and responding memorandum of law are included in the record on appeal. From these filings, we derive the scope of the motion for summary judgment as discussed below.

to the nonmoving party and resolve all factual inferences in favor of the nonmoving party. *Byrd*, 847 S.W.2d at 210; *Price v. Mercury Supply Co., Inc.*, 682 S.W.2d 924, 929 (Tenn. Ct. App. 1984).

## B. SUMMARY JUDGMENT AND TENNESSEE RULE OF CIVIL PROCEDURE 56

The absence of Xerox's motion for summary judgment and supporting memorandum of law from the record on appeal did not assist this court in determining exactly what issues were before the trial court on summary judgment. In accordance with Tenn. R. Civ. P. 56.03, Xerox supported its motion for summary judgment with a short and concise statement of undisputed material facts, a copy of the Agreement, and the affidavit of a Xerox litigation specialist attesting to the amount owed under the terms of the lease. Although Xerox's motion for summary judgment and memorandum of law are not in the record, its statement of material facts (excluding its citations to the record) follows:

1. The parties entered into a lease agreement regarding the lease of equipment described in said lease agreement.
2. [Digital Express] accepted the equipment, and continues to use the equipment which remains in [its] possession.
3. [Digital Express] despite continued use and possession of the equipment has failed to make payments in accordance with the Lease Agreement. Per the Lease Agreement, [Xerox] is entitled to acceleration of the lease and is owed the principal amount of $191,945.47.
4. [Xerox] is also entitled to costs and expenses including attorney fees.
5. [Digital Express] has filed a Counter-Complaint seeking money damages, however the Lease Agreement precludes any special, indirect, incidental, consequential or punitive damages.
6. In as much as [Digital Express's] Counter-Complaint is based on breach of warranty of fitness for a particular purpose, such warranty is disclaimed in the Lease Agreement.

Based on its statement of material facts, the Agreement, and the affidavit, Xerox established that (1) an enforceable contract existed, (2) Digital Express' nonpayment amounted to breach of that contract, and (3) Xerox was entitled to accelerated damages as a result. *See C & W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007) (noting the elements for breach of contract claim). Xerox also placed Digital Express's counterclaims at issue by addressing them in its statement of material facts to which Digital Express responded in its summary judgment filings. Therefore, we find the counterclaims were properly before the trial court and subject to disposition by summary judgment.

In response to Xerox's motion, Digital Express submitted the affidavit of Mr. Gill in addition to its statement of material facts and memorandum of law in opposition to summary judgment.[5] Mr. Gill attached as exhibits to his affidavit the January 21, 2003 letter he sent to Xerox complaining of the equipment's malfunction as well as three letters from dissatisfied customers complaining of the digital print quality on orders with Digital Express. Mr. Gill verified that he wrote and mailed his letter along with the customer letters he received to Xerox and further stated:

> Prior to January 21, 2003, I cooperated in every manner with Xerox and its technicians to correct the multitude of problems with the Xerox machine #2060, to no avail. That the equipment which is the subject of this litigation was, in fact, unplugged and stored in a warehouse on February 1, 2003, as stated in the January 21, 2003 letter for pickup by Xerox. That Xerox picked up the equipment in June, 2006. Further affiant saith not.

Rule 56.03 prescribes the proper procedure for responding to a motion for summary judgment:

> Any party opposing [a] motion for summary judgment must . . . file a response to each fact set forth by the movant either agreeing that the fact is undisputed, (ii) agreeing that the fact is undisputed for purposes of ruling on the motion for summary judgment only, or (iii) demonstrating that the fact is disputed. *Each disputed fact must be supported by specific citation to the record*.

Tenn. R. Civ. P. 56.03 (emphasis added). In its response to Xerox's statement of material facts, Digital Express attempted to dispute Xerox's statements that (1) the equipment was still in use and in its possession, (2) Xerox was entitled to acceleration of the Agreement, costs, and attorney's fees, (3) the Agreement precluded any special, indirect, incidental, consequential, or punitive damages, and (4) the validity of the warranty disclaimers.[6] However, Digital Express did not make a single

---

[5]Before Xerox moved for summary judgment, Digital Express filed with the court an affidavit of Mr. Gill on May 24, 2006, which stated:

> Comes now T.J. Gill, acting in his capacity as President of Digital Express Graphic, LLC, aka Digital Express, Inc., and makes oath that said company is not obligated under the contracts relied upon by Xerox Corporation in this cause for the reasons stated in the counter-complaint filed on behalf of Digital Express Graphic, LLC, and, as such no monies are owed to Xerox, as stated in the complaint.

Although the affidavit was not submitted in response to the motion for summary judgment, it merely makes legal conclusions and relies on the allegations in the counter-complaint. Therefore, it does not dispute a material fact or demonstrate a genuine issue for trial and does not assist our analysis. *See* Tenn. R. Civ. P. 56.06; *Gibbons v. Schwartz-Nobel*, 928 S.W.2d 922, 926 (Tenn. Ct. App. 1996).

[6]Digital Express disputed that the counter-complaint was "based solely on the theory of breach of [implied] warranty of fitness for a particular purpose." We do not read Xerox's statement in paragraph 6 as making this assertion.

citation to the record in support of its disputed material facts as required by Tenn. R. Civ. P. 56.03. The purpose of the citation requirement is to allow the court and parties to focus on the crucial portions of the record and ascertain whether genuine issues of material fact exist. Tenn. R. Civ. P. 56.03 advisory commission cmt. (1997). If a party does not comply with Rule 56.03, the court may refuse to consider those unsupported facts, regardless of how readily those facts could be ascertained from the record. *Owens v. Bristol Motor Speedway, Inc.*, 77 S.W.3d 771, 774 (Tenn. Ct. App. 2001) (citations omitted).

Furthermore, Rule 56.06 does not permit Digital Express, as the nonmoving party, to rely on the unsworn facts contained in its counter-complaint once Xerox presented evidence that it was entitled to judgment and the burden shifted. *See Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 689 (Tenn. 1996); *Byrd*, 847 S.W.2d at 211. Digital Express was required to "set forth specific facts showing that there [was] a genuine issue for trial." Tenn. R. Civ. 56.06. The affidavits or evidence offered to support the respective positions on summary judgment must be made on personal knowledge, establish facts that would be admissible in evidence, and affirm the affiant's competence. *Id*. Generally, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56, subject to the Tennessee Rules of Evidence, and the affiant must be a person through whom the exhibits may be admitted. *Summers v. Cherokee Children & Family Servs., Inc.*, 112 S.W.3d 486, 510 (Tenn. Ct. App. 2002); 10A Wright, Miller & Kane, Federal Practice & Procedure: Civil § 2722 (3d ed. 1998).

The customer letters attached to Mr. Gill's affidavit only establish complaints regarding the color and clarity of certain print jobs and only one letter indicates that the client terminated its account with Digital Express. The letters do not dispute any material fact or essential element of Xerox's claim for breach of the Agreement. Moreover, Digital Express admits that it stopped making payments to Xerox in the January 21, 2003 letter. Digital Express did not offer any proof to challenge the express provisions of the Agreement limiting the remedies and warranties available under the lease. Thus, Xerox was entitled to seek the accelerated balance due under the Agreement because it was undisputed that Digital Express failed to make lease payments. We find that Digital Express did not establish that a genuine issue of material fact existed for trial as to Xerox's complaint on sworn account.

## C. REMEDIES

The trial court found that Digital Express did not avail itself of the remedy provided for in the Agreement. Parties to a lease agreement "may include rights and remedies for default . . . in substitution for those provided in [Article 2A]." Tenn. Code Ann. § 47-2A-503(1). "Resort to a remedy provided . . . in the lease agreement is optional unless the remedy is expressly agreed to be exclusive." Tenn. Code Ann. § 47-2A-503(2). If, however, an exclusive remedy fails its essential purpose or is unconscionable, other statutory remedies may be sought. *Id*.

The Agreement explicitly limited the available remedies to either the repair or the replacement of the equipment in a paragraph entitled "REMEDY." Despite repeated service calls

and attempts to repair, it is undisputed that Digital Express never requested a replacement for the digital printer that was malfunctioning. "A fair and adequate remedy not invoked by the buyer cannot be said to fail of its essential purpose" when arguing the limitation of remedies is unenforceable. *Trinity Indus., Inc. v. McKinnon Bridge Co., Inc.*, 77 S.W.3d 159, 170 (Tenn. Ct. App. 2001) (citing *Arcata Graphics Co. v. Heidelberg Harris, Inc.*, 874 S.W.2d 15 (Tenn. Ct. App. 1993)). Further, we are unpersuaded by the statement that Digital Express, as a small business, did not possess the same bargaining power as that of Xerox so as to render the remedy provision unconscionable. *See Id.*

Because the Agreement effectively limited the remedies available in the event of a breach, we find it further supports the court's dismissal of the counterclaims upon which impermissible remedies were sought. The independent claim asserted under the Tennessee Consumer Protection Act is addressed below.

## D. DISCLAIMER OF WARRANTIES

The court dismissed Digital Express's counterclaims "because the warranties upon which the counterclaims are based, fitness for a particular purpose and merchantability, were conspicuously waived in the lease" and found the Agreement provisions met the statutory criteria for waiver. The threshold determinations in this case are whether or not the Agreement, by its terms, effectively waived the implied warranties and whether or not any express warranties were created and/or breached.

Tennessee adopted the Uniform Commercial Code ("UCC") in Title 47 and, in 1993, codified the law governing the lease of goods, Tenn. Code. Ann. § 47-2A-101 *et seq.*, which is separate and apart from the law governing sales. Although similar in form to transactions for the sale of goods, the separate treatment in the UCC for leases was deemed necessary because, among other differences, "the warranty law with respect to leases is uncertain." Tenn. Code Ann. 47-2A-101 cmt. to official text. Thus, the controlling law in the instant action appears in Article 2A, the Uniform Commercial Code–Leases while Article 2 remains instructive to similar issues construed in leases. *See* Tenn. Code Ann. § 47-2A-101 cmt to official text.

### 1. Implied Warranty of Merchantability

If the lessor is a merchant of goods of the kind subject to a lease, there is an implied warranty in the lease agreement that the goods will be merchantable. Tenn. Code Ann. § 47-2A-212(1). This implied warranty of merchantability may be excluded or modified if the disclaimer mentions "merchantability," is in writing, and is conspicuous. Tenn. Code Ann. § 47-2A-214(2). However, these requirements are subject to the following:

> [U]nless the circumstances indicate otherwise, all implied warranties are excluded
> by expressions like "as is," or "with all faults," or by other language that in common

understanding calls the lessee's attention to the exclusion of warranties and makes plain that there is no implied warranty, if in writing and conspicuous[.]

Tenn. Code Ann. § 47-2A-214(3).

Digital Express objects to the court's finding that Xerox properly waived the implied warranty of merchantability, claiming Xerox failed to meet the requirements of Tenn. Code Ann. § 47-2A-214[7] because the provision did not to mention merchantability and was not placed conspicuously within the contract. Digital Express further argues that, based on *Patton v. McHone*, 822 S.W.2d 608 (Tenn. Ct. App. 1991), Xerox is prevented from disclaiming the implied warranty of merchantability because it entered into a service agreement with Digital Express.

Although the contract consists of ten total pages, there are only three pages of verbiage outlining the parties' rights and liabilities. Appearing on the third page, paragraph 25 reads in part:

XEROX AS FINANCIAL INTERMEDIARY. If this option has been selected, you are leasing specifically identified products that were selected by you and that are not sold by Xerox in the normal course of its business. With regard to these products, you agree that Xerox is leasing them to you "As Is" and without warranty or liability (either direct or indirect) of any kind. As such, and with regard to these products, YOU HEREBY WAIVE THE IMPLIED WARRANTY OF MERCHANTABILITY.

The Uniform Commercial Code defines "conspicuous" as:

[A] term or clause so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals . . . is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. . . . Whether a term or clause is "conspicuous" or not is for decision by the court.

Tenn. Code Ann. § 47-1-201(10).[8] The Agreement plainly employs "as is" language and expressly states that Xerox was leasing the digital printing equipment without warranty of any kind. Accordingly, Xerox was not required to mention merchantability in order to effectively exclude implied warranties. See Tenn. Code Ann. 47-2A-214(3). The disclaimer stated in capital letters, and thus conspicuously, that, by executing the Agreement, Digital Express thereby "WAIVE[D] THE IMPLIED WARRANTY OF MERCHANTABILITY." We find that the waiver was in writing and was conspicuous in accordance with Tenn. Code Ann. § 47-2A-214.

---

[7]Digital Express improperly cited and relied on Tenn. Code Ann. § 47-2-316 which governs the exclusion or modification of warranties in the sale of goods.

[8]Definitions appearing in Tenn. Code Ann. § 47-1-201 expressly apply to Chapters 2-9 of Title 47 subject to additional definitions therein. Tenn. Code Ann. § 47-2A-103(4).

As to Digital Express's reliance on *Patton v. McHone*, we agree with the trial court that the rules of law limiting the disclaimer of warranties in *Patton* do not apply to the instant action. In *Patton*, the buyers of a used vehicle sued various parties involved in the sale, claiming breach of the implied warranty of merchantability, among other things, against the dealership. *Patton*, 822 S.W.2d at 612, 616. When the buyers purchased the car, they also purchased an extended service contract from the dealership, which also financed the transaction. *Id*. at 612. The court opined that "[t]he implied warranty of merchantability cannot be disclaimed or limited if the seller either gives the buyer a written warranty or enters into a service contract with the buyer within ninety days after the sale." *Patton*, 822 S.W.2d at 617 (citing 15 U.S.C. § 2308(a)). However, *Patton* involved the sale of a used vehicle, unquestionably considered a consumer product, on claims brought under Tenn. Code Ann. § 47-2-101 *et seq.*, the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act governing consumer goods, and other grounds. *See* 15 U.S.C. § 2301(1) (defining "consumer product" as any tangible personal property distributed in commerce and normally used for personal, family, or household purposes); *see also* 16 C.F.R. § 700.1(a) (stating that "[t]he Act applies to written warranties on tangible personal property which is normally used for personal, family, or household purposes."); 16 C.F.R. § 701.1(b) (stating "[p]roducts which are purchased solely for commercial or industrial use are excluded. . . ."). The leased digital printing equipment at issue in this case, used by Digital Express to produce compact disc jackets for commercial distribution among other things, is not a product normally used for personal, family, or household purposes.

## 2. Implied Warranty of Fitness for a Particular Purpose

Next, Digital Express argues the Agreement did not effectively disclaim the implied warranty of fitness for a particular purpose. Tenn. Code Ann. § 47-2A-213 states:

[I]f the lessor at the time the lease contract is made has reason to know of any particular purpose for which the goods are required and that the lessee is relying on the lessor's skill or judgment to select or furnish suitable goods, there is in the lease contract an implied warranty that the goods will be fit for that purpose.

To exclude or modify the implied warranty of fitness for a particular purpose, "the exclusion must be by a writing and be conspicuous." Tenn. Code Ann. § 47-2A-214(2). Paragraph 5 of the Agreement states in full: "WARRANTY DISCLAIMER. XEROX DISCLAIMS THE IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE."

As previously defined, the disclaimer in all capital letters was conspicuously placed in the written Agreement such that a reasonable person and, in this case, a reasonable corporation, would have noticed the warranty disclaimer. Accordingly, we find that the Agreement effectively waived the implied warranty of fitness for a particular purpose.

## 3. Express Warranties

Digital Express claims that Xerox made certain representations regarding the capabilities of the digital printers which induced it to enter into the Agreement. Relying on Tenn. Code Ann. § 47-2A-210,[9] which provides that express warranties may be created by a lessor's affirmations of fact or promises about the goods, Digital Express asserts that Xerox breached the express warranties created at the time of sale when the printers did not perform as represented. This argument presupposes that an express warranty was created. There is nothing in the record to establish this material fact. The January letter Digital Express supplied stated in general terms that "Xerox had and still continues to advertise this machine as color consistent, reliable, etc., but nothing could be farther from the truth." While this may be so, the statement alone does not rise to the level of specificity required to demonstrate there is a genuine issue for trial. *See Perryman v. Peterbilt of Knoxville, Inc.*, 708 S.W.2d 403, 406 (Tenn. Ct. App. 1985) (finding affidavits submitted in response to summary judgment which generally stated that seller's agent made "material fraudulent misrepresentations and express warranties which were not true" did not "rise to the dignity of evidence that would support [p]laintiff's claim). Digital Express offered no evidence about what specifically was represented, when the representations were made, who made the representations, or any details about the representations.[10]

---

[9]Although Digital Express actually cited Tenn. Code Ann. § 47-2-313 governing the sale, instead of the lease, of goods, the statutory language and construction is essentially the same as Tenn. Code Ann. § 47-2A-210, which provides that:

> (1) Express warranties by the lessor are created as follows:
>
> (a) Any affirmation of fact or promise made by the lessor to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
>
> (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

[10]Digital Express includes in a footnote to its memorandum of law in opposition to summary judgment that:

> Mr. Gill would testify that he was approached by Xerox representatives Messrs. Horst and Maddux who introduced the subject printer/copier to him and made numerous affirmations of fact about the machine which induced him to contract, affirmations which turned out to be false. Mr. Horst's name appears on plaintiff's Exhibit 'A.'

(continued...)

Likewise, nowhere in the record does Digital Express explain how it relied on or was induced by the alleged representations to enter into the Agreement, with the exception of the general allegations in the counter-complaint. When Xerox properly challenged Digital Express's claims of breach of express warranties and negligent misrepresentation, it was incumbent upon Digital Express to substantiate those claims with specific facts lest they be dismissed. "[I]f the non-moving party fails to establish the existence of an essential element, there can be no genuine issue as to any material fact since failure of proof concerning an essential element of the cause of action necessarily renders all other facts immaterial." *Alexander v. Memphis Individual Practice Ass'n*, 870 S.W.2d 278, 280 (Tenn. 1993) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986)). Accordingly, we find Digital Express failed to prove that Xerox made any express warranties with respect to the leased equipment.

## E. Tennessee Consumer Protection Act

Digital Express asks this court to determine "[w]hether the Consumer Protection Act is applicable under the facts of this case" and raises the issue of its standing to bring a private cause of action against Xerox under the Tennessee Consumer Protection Act of 1997 ("CPA"), Tenn. Code Ann. § 47-18-101, *et seq*. Specifically, Digital Express argues the CPA applies to it as a business enterprise as well as the leased machine and thus should protect it from the alleged deceptive misrepresentations of Xerox which allegedly induced it to enter into the Agreement. While we agree that, as a corporation, Digital Express would have standing under the Consumer Protection Act for damages resulting from unfair or deceptive practices in violation of the act, *ATS Se., Inc. v. Carrier Corp.*, 18 S.W.3d 626, 630 (Tenn. 2000), we do not find it relevant to the issues on appeal. The issue before us is whether Digital Express proved a genuine issue of material fact existed in order to survive summary judgment.

Xerox contends the issue of standing is not properly before this court because it was not raised before the trial court. No transcript of the motion hearing appears in the record to assist our review. The trial court did not explicitly reference the CPA allegations or acknowledge counsel's argument regarding the CPA claims in its detailed order. Rather, the court recited the basis for its findings:

> The Court reviewed [Xerox's] Motion for Summary Judgment and supporting papers including a memorandum of law, affidavit and statement of material facts. The Court also reviewed [Digital Express's] response and ruled in [Xerox's] favor *after conducting a hearing* on July 28, 2006 *on all issues* except whether the implied

---

[10](...continued)

However, Mr. Gill did not testify or include any such statements in his sworn affidavit. Additionally, Digital Express fails to offer or cite specific facts concerning the alleged representations in the record as required by the Rules of the Court of Appeals. *See* R. Ct. App. 6(b).

warranty of fitness could be disclaimed when the parties also entered into a maintenance agreement.

(emphasis added). "Without a complete record or sufficient statement of the evidence from which to determine whether the trial court acted appropriately, we 'must assume the sufficiency of the evidence to support the judgment.'" *Taylor v. Allstate Ins. Co.*, 158 S.W.3d 929, 931 (Tenn. Ct. App. 2003) (quoting *Houston v. Mounger*, No. E2002-00779-COA-R3-CV, 2003 WL 22415363, at *2 (Tenn. Ct. App. Oct. 23, 2003)); *see also Easterly v. Haun*, 1927 WL 2086, at *4 (Tenn. Ct. App. May 21, 1927) (applying the assumption where the record on appeal is incomplete but recitations in the court's order stated it considered the record and argument of counsel before expounding its opinion and findings).

Again, Digital Express offered no specific facts to support the CPA violation(s) alleged in its counter-complaint. Digital Express therefore did not create a factual dispute as to whether or not Xerox represented that the leased goods, services, and equipment were of "a particular standard, quality or grade when such equipment was not of the standard, quality or grade represented by [Xerox] which induced [Digital Express] to lease same." *See* Tenn. Code Ann. § 47-18-104(b)(7). Digital Express was required to put forth evidence of similar facts to demonstrate a genuine issue for trial on its claim for breach of express warranty. Because we find Digital Express did not meet its burden on summary judgment with respect to the alleged misrepresentations and assume the trial court based its judgment upon sufficient evidence, we affirm the dismissal of Digital Express's counterclaim under the CPA.

### III. CONCLUSION

Based upon the foregoing analysis, we affirm the judgment of the chancery court in all respects. Costs of appeal are assessed against Digital Express Graphic, LLC0 for which execution may issue, if necessary.

_____
ANDY D. BENNETT, JUDGE